UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DOHERTY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BARCLAYS BANK DELAWARE, a Delaware Corporation,<br><br>Defendant. | Case No.: 16-cv-01131-AJB-NLS<br><br>**ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY**<br>**(Doc. No. 25)** |

Presently before the Court is Defendant Barclays Bank Delaware's ("Defendant") motion to compel individual arbitration and to stay, or in the alternative to dismiss. (Doc. No. 25.) Plaintiff Michael Doherty ("Plaintiff") opposes the motion. (Doc. No. 28.) For the reasons set forth below, the Court **DENIES WITHOUT PREJUDICE** Defendant's motion.

## BACKGROUND

This matter comes before the Court alleging Defendant violated the Telephone Consumer Protection Act ("TCPA")[1]. (Doc. No. 13.) Plaintiff is a resident of San Diego,

---

[1] The TCPA exists to put an end to invasive telephone calls that are autodialed, placed without consent, and made without regard to the charges such calls can incur. (Doc. No. 13 ¶ 4.)

1

California. (*Id.* ¶ 9.) Defendant is one of the top ten issuers of credit cards in the United States. (*Id.* ¶ 2; Doc. No. 22 ¶ 2.)

On June 9, 2012, Plaintiff was added, without his purported knowledge, as an authorized user to his father's credit card account (the "Account") through Defendant's website. (Bell Decl. I ¶ 7, Doc. No. 25-1; Doherty Decl. ¶¶ 2, 3, Doc. No. 28-1.) Plaintiff was at no time an authorized user of his mother's credit card. (Doc. No. 28 at 9.)

Between October 26, 2015, and February 4, 2016, Plaintiff then alleges that Defendant called his cellular telephone number at least fifty-five times. (Doc. No. 13 ¶¶ 25, 26; Doherty Decl. ¶ 4.) The Court notes that it is disputed whether these calls concerned the credit card account of Thomas Doherty, Plaintiff's father, or a credit card account of Chona Doherty, Plaintiff's mother.[2] (Doc. No. 25 at 8; Doc. No. 28 at 8.) Nevertheless, Plaintiff contends that he never provided his cellular number to Defendant or gave prior express consent for Defendant to call his cellular telephone using a prerecorded or artificial voice. (Doc. No. 13 ¶¶ 22, 24.) In addition, Plaintiff alleges that he incurred a charge through his service provider for each call Defendant made to his cellular telephone. (*Id*. ¶ 29.)

On three separate occasions: June 12, 2012, August 14, 2013, and June 4, 2015, Defendant mailed multiple credit cards for the Account to Plaintiff's home address. (Doc. No. 25 at 10; Bell Decl. I ¶¶ 8, 10, 12.) The Account cards sent on August 14, 2013, were activated on September 19, 2013, with Plaintiff's cell phone and without his purported knowledge. (Bell Decl. I ¶ 11; Doherty Decl. ¶¶ 5, 9.) The Account cards sent on June 12, 2012, included the following on the back: "Use of this card is subject to the Cardmember

---

[2] Defendant has asserted that it was attempting to contact Plaintiff's father with the calls from October 2015 to December 2015. (Doc. No. 25 at 8; Bell Decl. II ¶ 9, Doc. No. 34-1.) Plaintiff contends the calls concerned his mother. (Doc. No. 13 ¶¶ 24, 25; Doc. No. 28 at 8; Doherty Decl. ¶ 4.) However, Plaintiff has stated that he does not "recall hearing any messages or speaking to anyone about attempting to contact [his] father, although that may have happened." (Doherty Decl. ¶ 4.)

Agreement issued by Barclays Bank Delaware."[3] (Doc. No. 25 at 10; Bell Decl. I ¶ 8.) The Cardmember Agreement ("the Agreement") contains an arbitration clause, requiring the parties, including authorized users, to submit any dispute "arising from or relating in any way to th[e] Agreement or [] Account" to arbitration. (Bell Decl. I ¶ 9; Bell Decl. III Ex. I at 6-7, Doc. No. 37-1.)

On October 3, 2015, Plaintiff's mother called Defendant to cancel an automatic payment on the Account. (Lamborn Decl. ¶ 8, Doc. No. 25-2; Doherty Decl. ¶ 8.) Plaintiff and his father were brought onto the call and Plaintiff agreed to make a one-time payment of $548.19 on the Account. *(Id.)* Plaintiff was removed as an authorized user of the Account during this phone conversation.[4] (Lamborn Decl. ¶ 9; Doherty Decl. ¶ 7.)

Plaintiff instituted this action on May 11, 2016, by filing a complaint seeking redress for Defendant's alleged noncompliance with the TCPA. (Doc. No. 1.) On July 22, 2016, Defendant filed a motion to strike Plaintiff's class allegations in the complaint. (Doc. No. 9.) On the same day, Defendant also filed a motion to stay. (Doc. No. 10.) Plaintiff filed his first amended complaint on August 9, 2016. (Doc. No. 13.) On August 29, 2016, the Court denied Defendant's motion to strike and motion to stay. (Doc. No. 19.) Shortly thereafter, on September 29, 2016, Defendant filed the instant motion to compel arbitration. (Doc. No. 25.)

## **LEGAL STANDARD**

The Federal Arbitration Act ("FAA") governs the enforcement of arbitration agreements involving interstate commerce. 9 U.S.C. § 2. Pursuant to Section 2 of the FAA, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contact." *Id*. The FAA permits "[a]

---

[3] It is unclear whether the Account cards that were activated on September 19, 2013, had a similar statement.

[4] Plaintiff contends that he asked to be removed as an authorized user during the October 3, 2015 conversation. (Doherty Decl. ¶ 7.) Defendant asserts that it was Plaintiff's mother and father who requested that Plaintiff be removed as an authorized user. (Lamborn Decl. ¶ 9.)

party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in [the] agreement." *Id.* § 4.

Given the liberal federal policy favoring arbitration, the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). Thus, in a motion to compel arbitration, the district court's role is limited to determining "'(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Kilgore v. KeyBank, Nat'l Ass'n*, 673 F.3d 947, 955 (9th Cir. 2012) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). If these factors are met, the court must enforce the arbitration agreement in accordance with its precise terms. *See id*.

While generally applicable defenses to contract, such as fraud, duress, or unconscionability, may invalidate agreements, the FAA preempts state law defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Because of the strong policy favoring arbitration, any doubts are to be resolved in favor of the party moving to compel arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

## DISCUSSION

### I.     The Court May Consider Plaintiff's Arguments

Defendant first argues that the Court may not consider the merits of Plaintiff's arguments because they go to the arbitration agreement's applicability, an issue which the Agreement delegates to the arbitrator. (Doc. No. 25 at 21.) In opposition, Plaintiff asserts that as a threshold matter, the Court is required to determine whether a valid agreement to arbitrate exists. (Doc. No. 28 at 14.)

Under the FAA, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,'

such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent–A–Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). "Because such issues would otherwise fall within the province of judicial review, we apply a more rigorous standard in determining whether the parties have agreed to arbitrate the question of arbitrability." *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011). Thus, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). "Such [c]lear and unmistakable 'evidence' of agreement to arbitrate arbitrability might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so." *Momot*, 652 F.3d at 988 (citation omitted).

However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Commc'n Workers of Am.*, 475 U.S. at 648 (citation omitted). Therefore, "when one party disputes 'the making of the arbitration agreement,' the Federal Arbitration Act requires that 'the court [] proceed summarily to the trial thereof' before compelling arbitration under the agreement." *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) (quoting 9 U.S.C. § 4). The Ninth Circuit has interpreted this to include challenges to the arbitration clause, as well as challenges to the making of the contract containing the arbitration clause. *Id.* (citing *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1140–41 (9th Cir. 1991)).

Here, Plaintiff is challenging the existence of a contract with Defendant. Therefore, following relevant Ninth Circuit case law, the Court must first decide whether a valid contract exists. For the reasons set forth below, the Court finds the requisite showing of the existence of a valid contract has not been met.

**II.    A Valid Arbitration Agreement Does Not Exist**

Defendant argues that as Plaintiff was an authorized user of the Account, that there can be no dispute that a valid arbitration agreement exists. (Doc. No. 25 at 21.) In

opposition, Plaintiff asserts that Defendant may not compel arbitration because he was never a party to the agreement. (*See* Doc. No. 28.) To determine whether a valid agreement to arbitrate exists, we "apply ordinary state-law principles that govern the formation of contracts." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (citation and internal quotation marks omitted). Here, California law governs the issue of contract formation and as the party seeking to compel arbitration, Defendant bears "'the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence.'" *Id.* (quoting *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)). After a careful analysis of both parties' motions, declarations, and in light of the applicable law, the Court finds Defendant has not carried its burden.

"It is undisputed that under California law, mutual assent is a required element of contract formation." *Knutson*, 771 F.3d at 565. Mutual assent may be manifested through words or conduct and acceptance can be implied through action or inaction. *Id*. The mutual consent necessary to form a contract "is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *Deleon v. Verizon Wireless, LLC*, 207 Cal.App.4th 800, 813 (2012) (citation omitted). "Although mutual consent is a question of fact, whether a certain or undisputed state of facts establishes a contract is a question of law for the court." *Id.* at 813.

In this case, it is clear that factual disputes exist. First, the Court notes that the facts are unclear as to whether mutual assent exists between Plaintiff and Defendant. According to Defendant, Plaintiff consented to the Agreement by being an authorized user and using the Account on three separate occasions.[5] (Doc. No. 25 at 21-22; Doc. No. 37 at 6-8.) Two of these alleged uses were balance transfers from another credit card purportedly belonging

---

[5] Defendant briefly mentions that Plaintiff may have assented by purchasing airline tickets. (Doc. No. 37 at 6-7.) In light of Plaintiff's denial of this allegation, in combination with Defendant's lack of support for this assertion, the Court is unpersuaded by this argument.

to Plaintiff that totaled $21,239.69.[6] (Lamborn Decl. ¶¶ 4-7.) However, both transfers occurred online and it is unclear who made the transfers. (*Id.*) In addition, Plaintiff denies he made the two transfers, and that the other account used in the transfer belonged to him. (Doherty Decl. ¶ 6.)[7] Second, Plaintiff disputes ever having knowledge that he was an authorized user for the Account. Plaintiff argues that the October 3, 2015 conversation is when he first learned he was an authorized user with the ability to use his father's account. (*Id.* ¶ 7.) In response, Defendant has failed to show that Plaintiff assented to the Agreement prior to this one-time payment Plaintiff made on October 3, 2015.

Given these disputed facts, and under California common law, the Court finds that there are genuine factual issues as to whether Plaintiff consented to be bound to the Agreement. Specifically, with so many facts in dispute, it is unclear to the Court whether Plaintiff's manifested actions reasonably portray that he consented to the terms of the arbitration agreement. *See Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal.App.3d 987, 992 (1972) (holding that as "the outward manifestation or expression of assent is the controlling factor," an offeree, "knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains."). Thus, finding that Defendant has failed to carry its burden in showing the existence of an agreement to arbitrate between the parties by a preponderance of the evidence, arbitration is inappropriate.

The Ninth Circuit's decision in *Three Valleys* supports the Court's decision. There, plaintiffs sued for losses in their investment accounts. *Three Valleys*, 925 F.2d at 1137. Defendant asserted an arbitration clause in a client agreement and plaintiffs argued the entire agreement was not binding because the signor lacked authority to bind plaintiffs. *Id.*

---

[6] The first transfer occurred on September 29, 2011, almost a year before Plaintiff became an authorized user of the account. (Lamborn Decl. ¶ 4.) The second transfer occurred twenty days after Plaintiff became an authorized user in 2012. (*Id*. ¶ 5.)

[7] However, both parties agree Plaintiff made a one-time payment on the Account during the October 3, 2015 conversation. (Lamborn Decl.¶ 8; Doherty Decl. ¶ 8.)

at 1138. The Ninth Circuit reversed the district court's order to compel arbitration of the contract formation issue on the grounds that forcing the formation issue into arbitration would have held the plaintiffs to an arbitration clause upon which they might not have agreed. *Id.* at 1138–42. Similarly, in the present matter, given the array of disputed facts, the Court is unwilling to compel Plaintiff to arbitrate his claims when Defendant has failed to make the requisite showing of Plaintiff assenting to the Agreement and the arbitration clause contained within. Accordingly, the Court **DENIES** Defendant's motion to compel arbitration.[8]

## CONCLUSION

Based on the foregoing, the Court **DENIES WITHOUT PREJUDICE** Defendant's motion to compel individual arbitration and to stay. Defendant's alternative motion to dismiss is thus rendered moot.

**IT IS SO ORDERED.**

Dated:  February 14, 2017

Hon. Anthony J. Battaglia
United States District Judge

---

[8] As the Court is denying Defendant's motion to compel arbitration for failure to demonstrate that a valid arbitration agreement exists, the Court finds no reason to analyze both parties' arguments concerning the scope of the Agreement and waiver by conduct.